## Abraham Bartolet, Plff. in Err., *v.* Mary A. Saylor.

Where a bidder at a judicial sale under execution ceased bidding when he reached the limit imposed by his principal, and the attorney for the plaintiff in the execution agreed to let such bidder have the property at a certain sum over what the attorney would have to bid to get it,

and thereupon the attorney bid a little higher and the property was knocked down to him, and he let the first bidder's principal have it as agreed—*Held*, that as it appeared from the evidence that there was no fraud in the transaction and that it did not and was not intended to prevent others from bidding, it did not render the sale unfair or void as against the defendant in the execution.

(Argued February 14, 1888.  Decided March 5, 1888.)

January Term, 1887, No. 42, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ.  Error to the Common Pleas of Schuylkill County to review a judgment in favor of the plaintiff in an action of ejectment, March Term, 1884.  No. 220.  Affirmed.

Ejectment by Mary A. Saylor, against Abraham Bartolet.

The facts as they appeared at the trial were as follows:

Certain land of Abraham Bartolet was put up for sale by the sheriff in December, 1882.  S. H. Kaercher attended the sale in the interest of Mary Saylor, who owned the adjoining land, and bid up the land to $3,500, which he testified was the limit which she had fixed.  Mr. McCool, the counsel for the plaintiff in the execution, bid $3,525, and the property was knocked down to him.  McCool agreed with Kaercher to convey the property to Mary Saylor for $100 over what he had to pay for it.  This was done, and subsequently this action brought.  Bartolet alleged that the agreement was to cease bidding so as to allow the property to be struck down for a sum greatly below its real value.

The plaintiff offered evidence as to what the surrounding property was sold for in May, 1883.  Admitted under objection.  [1]

The defendant presented, *inter a* the following points:

That under the undisputed evidence in this case the verdict must be for the defendant.

*Ans.* That point we decline to affirm.  We submit the matter to you for your determination under the law as we laid it down to you.  You will apply the facts, as you find them, to the law and render your verdict accordingly.  On the contrary, if you find that the sale was fair and open, and that there was no fraudulent arrangement between these parties or that even if there were, the property nevertheless brought as high a price

as it would have brought. without the fraudulent arrangement, then the plaintiff would be entitled to a verdict at your hands. [8]

The court charged, *inter alia,* as follows:

"You will recollect that this sale took place in December, 1882. He (Bartolet) alleges that in May, 1883, Mr. Kaercher told him that they had been obliged to pay, or that they had paid, Mr. McCool, who represented the Courtney judgment, $100, and that this $100 was paid to Mr. McCool for the purpose of preventing him from bidding the property up to $4,500 or $4,700. He swears that he heard Mr. Kaercher say that. This, of course, is the most important testimony, so far as the defendant is concerned, in this case. If you would believe that testimony, that that statement was made by Mr. Kaercher, and also that it represented the actual fact (what actually did take place), that Mr. Kaercher had really made a bargain with Mr. McCool for the purpose of preventing Mr. McCool from running up this property to $4,500, and that that bargain made between him and Mr. McCool was successful in preventing the property from being run up to a greater sum than it otherwise would have brought, then it becomes important testimony for you to consider as to whether these were not such unfair means for the purpose of securing the purchase of this property." [2]

"On the other hand, you have the testimony on the part of the plaintiff in this case, not only as to that conversation, but as to what actually did take place at the time of the sheriff's sale. You have the testimony of Mr. McCool, the testimony of Mr. Kaercher, and the testimony of Mr. Frank Saylor. That testimony in the main agrees. And we say to you, if you believe the testimony of Mr. McCool, or if you believe the testimony of Mr. Kaercher as to what took place at that time, then there were no fraudulent means used for the purpose of obtaining the possession of this property, or for the purpose of preventing it from bringing a greater price." [3]

"Is there anything shown here at all that anybody else would have bid up this property higher than that? It may be true that Mr. McCool might have been willing to bid the property up to $3,600, but is there any evidence here to show that he was prevented from bidding the property up to $3,600 by an ar-

rangement Kaercher made with him? Not at all. Mr. Kaercher's arrangement with Mr. McCool certainly did not prevent Mr. McCool from bidding up the property to $3,600. On the contrary it would have been an inducement to Mr. McCool to have bid it up to $3,600 if there had been any other bidding, because Mr. McCool would then have had some assurance that if the property was knocked off to him he could have sold it to somebody else. Therefore, so far as that arrangement was concerned between them, instead of having the effect of preventing McCool from bidding it up to $3,600, if there had been any other persons to bid." [4]

"What was the effect of this arrangement made by Mr. Kaercher and Mr. McCool? If you find under the evidence in this case that Mr. Kaercher had bid up to $3,500, and that that was the extent to which he was authorized to bid, and that is testified to by him and testified to by Mr. Saylor, that that was the extent of his authority to bid, then, of course, when he got to $3,500, and he announced the fact that he did not intend bidding any farther, that he was off, he would have been justified in going to a person who was a bidder and saying: 'If you purchase this property will you give me the first chance to buy it from you?' The party replied: 'Yes, I will for a consideration.' If that was the arrangement between them it was not fraudulent. It was perfectly legitimate if you find such to be the state of facts between these parties. It does not make any difference whether that arrangement was made between them before the property was knocked off, for the reason that it does not affect the bidding on the property, it does not affect the sheriff's sale. The party who makes the offer has gone to his limit, does not intend to bid any more and is not prevented thereby from going on and purchasing the property. Instead of that it is an additional inducement to go on and secure the purchase of the property, because then he has some assurance that he would be able to sell it again at an advance. If you find that to be the state of facts under the evidence in the case, then there is nothing here to show a fraudulent arrangement so far as the purchase of this property is concerned. Even if there were a fraudulent arrangement, is there anything to show that the property brought a less price than it otherwise would have brought if the sale had been a perfectly fair sale? These are facts for you to take into consideration in determining this case.

You see that the defendant Bartolet's case rests, as I have said to you, upon his statement as to what he heard Kearcher say. The case, on the part of the plaintiff, rests upon the testimony of Mr. McCool, upon the testimony of Mr. Kaercher, and upon the testimony of Mr. Saylor. We say to you, if you find the facts to be as McCool and Kearcher state, and they state exactly what the arrangement was, then we think the plaintiff is entitled to a verdict at your hands for the property in dispute." [5]

Verdict and judgment for plaintiff, whereupon defendant took this writ, specifying as error, *inter alia:* (1) The admission of evidence as to the price of surrounding property in May, 1883; (8) the refusal of defendant's point; and (2–5) the portions of the charge above set out, as indicated by numerals.

*F. W. Bechtel* and *James Ryon,* for plaintiff in error.—The fact as to what one man may have sold or received for his property is certainly collateral to an issue involving what another should receive, and, if in no way connected with it, proves nothing. East Pennsylvania R. Co. v. Hiester, 40 Pa. 53; East Pennsylvania R. Co. v. Hottenstine, 47 Pa. 28; Hays v. Briggs, 74 Pa. 373; Pittsburgh & W. R. Co. v. Patterson, 107 Pa. 461.

In Birney's Appeal, 114 Pa. 519, 7 Atl. 150, the court said: The obvious effect of the notice at the sale was to mislead or deter bidders. In the absence of explanation it is not unreasonable to infer that D's purpose was to secure the property below value and then claim greater part of the proceeds under his lien. To sanction such a transaction, D making no explanation of his conduct, would be to encourage the practice of trickery, deception, and fraud, of which there is already too much in judicial sales.

An agreement by a bidder at sheriff. sale of real estate to pay the judgment of another, if the latter would not bid, is fraudulent as to the creditor, is against public policy as well as good morals, and therefore void. Slingluff v. Eckel, 24 Pa. 472; 1 Story Eq. 293; Jones v. Caswell, 3 Johns. Cas. 29, 2 Am. Dec. 134; Thompson v. Davies, 13 Johns. 112.

If parties agree together to buy in property at sheriff's sale, and by that means depress the price, it is a fraud which avoids the sale. Smull v. Jones, 1 Watts & S. 128; Jackson v. Summerville, 13 Pa. 359; Hogg v. Wilkins, 1 Grant, Cas. 68;

Seylar v. Carson, 69 Pa. 81; Cocks v. Izard, 7 Wall. 559, 19 L. ed. 275.

An agreement between persons having separate and distinct interests not to bid against each other at a sheriff's sale, but to divide the profits of the purchase, is against public policy, and is a fraud upon other persons interested in the sale. Hawley v. Cramer, 4 Cow. 717; Herman, Executions, 346.

The law has regulated sales on execution with a jealous care, and provided a course of proceeding likely to promote a fair competition. A combination to promote such competition is contrary to morality and sound policy. It operates as a fraud upon the debtor and his remaining creditors, by depriving the former of the opportunity of obtaining a full equivalent for the property which is devoted to the payment of his debts, and opens a door for oppressive speculations. Jones v. Caswell, 3 Johns. Cas. 29, 2 Am. Dec. 134; Troup v. Wood, 4 Johns. Ch. 254.

Where a vendee is guilty of actual fraud in procuring a title to land no title passes to him whether the sale be private or judicial; and the former owner of the land may recover the same in ejectment without offering to refund to the purchaser the money which he paid to the sheriff. Gilbert v. Hoffman, 2 Watts, 66, 26 Am. Dec. 103; McCaskey v. Graff, 23 Pa. 321, 62 Am. Dec. 336.

So it will be a void sale if the purchaser prevails on the persons attending the sale to desist from bidding, by reason of suggestions or by way of appeal to the sympathies of the company. 2 Kent. Com. § 539; Fuller v. Abrahams, 6 J. B. Moore, 316, 3 Brod. & B. 116; Veazie v. Williams, 3 Story, 623, Fed. Cas. No. 16,907; Miller's Appeal, 30 Pa. 478; Bowers v. Bowers, 26 Pa. 74, 67 Am. Dec. 398; Pennock's Appeal, 14 Pa. 446, 53 Am. Dec. 561.

Such sales are not merely voidable, but void, and are incapable of confirmation without a new consideration. Miller's Appeal, 30 Pa. 478.

Where two or more persons are parties to a fraudulent act the declarations of each, in relation to it, in the absence of the other, are admissible. Jackson v. Summerville, 13 Pa. 359; McCaskey v. Graff, 23 Pa. 321, 62 Am. Dec. 336.

*E. D. Smith* and *S. H. Kaercher*, for defendant in error.— Actual collusion or fraud in fact is a question exclusively for

the jury. Avery v. Street, 6 Watts, 247; Loucheim Bros. v. Henszey, 77 Pa. 305; Riegel v. Wooley, 81* Pa. 227.

The opinion of a judge on a matter of fact is not the subject of a writ of error. Sampson v. Sampson, 4 Serg. & R. 329; Long v. Ramsay, 1 Serg. & R. 72; Renn v. Pennsylvania Hospital, 2 Serg. & R. 414; Riddle v. Murphy, 7 Serg. & R. 237; Graham v. Smith, 25 Pa. 323; Evans v. Maury, 112 Pa. 312, 3 Atl. 850; Barton v. Hunter, 101 Pa. 411.

The law presumes that a public judicial sale is made in good faith; and this presumption stands, unless overthrown by clear and satisfactory evidence of fraud or unfair means. Furbush v. Greene, 108 Pa. 506; Brubaker v. Okeson, 36 Pa. 519.

Even if there had been a fraud at the sheriff's sale and the purchaser had not been a party to it, his vendee would have taken a good title, although the latter had notice or knowledge of the fraud. Stewart v. Reed, 91 Pa. 287.

PER CURIAM:

The material exceptions, in this case, are to the charge of the learned judge; we have examined both the charge and exceptions, and find in the latter nothing that we can sustain. The question was one of fraud; and this question was fully and fairly submitted to the jury. If Kaercher's testimony was believed, as it seems to have been, there was clearly no fraud in what he did, either actual or constructive. He had reached the limit authorized by his client, and he intended to bid no more; neither did he interfere to prevent others from bidding against McCool. Under these circumstances he was at liberty to make, with the purchaser, what arrangement he thought best for his client; and clearly, the arrangement he did make injured neither the defendant nor his creditors.

The judgment is affirmed.